The People *v.* Davis.

---

SUPREME COURT. Albany General Term, September, 1858. *Wright,* *Gould* and *Hogeboom,* Justices.

## THE PEOPLE *v.* ABRAHAM DAVIS.

An indictment charging an assault and battery with "an intent to kill," without also charging that the assault and battery were committed with a deadly weapon, or by such other means or force as were likely to produce death, will not warrant a conviction for any offence higher than assault and battery.

A verdict by which the prisoner is found "guilty of an assault and battery with intent to kill," without reference to a sufficient indictment, and without specifying the means by which the assault and battery were committed, will authorize no sentence for any offence beyond a simple assault and battery.

CERTIORARI to the Court of Sessions of Ulster county. By the return it appeared that an indictment was found in that court against the prisoner and one James Dumond, as follows: *State of New York, Ulster County, ss:*

The Jurors of the People of the State of New York, in and for the body of the county of Ulster, upon their oath, present:

That Abraham Davis and James Dumond, late of the town of Kingston, in the county of Ulster, aforesaid, on the nine-

teenth day of November, in the year of our Lord one thousand eight hundred and fifty-seven, with force and arms, at the town and county aforesaid, in and upon Eugene Best, of the town of Kingston, then and there being, did feloniously make an assault, and they, the said Abraham Davis and the said James Dumond, with certain clubs, one of which the said Abraham Davis and the said James Dumond, each in his right hand then and there had and held, the same being deadly and dangerous weapons, did beat, strike, cut and wound, with intent, him, the said Eugene Best, then and there feloniously and willfully to kill, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Abraham Davis and James Dumond, on the said nineteenth day of November, in the said year 1857, at the place aforesaid, with force and arms, in and upon the said Eugene Best, then and there being, feloniously did make an assault; and they, the said Abraham Davis and James Dumond, with certain clubs, which they, the said Abraham Davis and James Dumond, then and there had and held in their hands, the same being deadly and dangerous weapons, feloniously did beat, strike, cut and wound, with intent, him, the said Eugene Best, then and there feloniously to kill and murder, and other wrongs then and there did, to the great damage of the said Eugene Best, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Abraham Davis and the said James Dumond, late of the said town of Kingston, on the said nineteenth day of November, in the said year 1857, with force and arms, at the place aforesaid, in and upon the head and face of the said Eugene Best, feloniously did make an assault; and they, the said Abraham Davis and James Dumond, with their fists and feet, did then and there beat, strike, kick, cut and wound, with intent, him, the said Eugene Best, then and there feloni-

The People *v.* Davis.

ously and willfully to kill and murder, and other wrongs to the said Eugene Best then and there did, to the great damage of the said Eugene Best, contrary to the form of the statute of the State of New York, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Abraham Davis and the said James Dumond, on the said nineteenth day of November, in the said year of our Lord, 1857, with force and arms, at the said town of Kingston, in and upon the said Eugene Best, feloniously did make an assault; and they, the said Abraham Davis and the said James Dumond, with deadly and dangerous weapons, to the jurors unknown, which the said Abraham Davis and James Dumond then and there had and held in their hands, feloniously did beat, strike, cut and wound, with intent, him, the said Eugene Best, then and there feloniously and willfully to kill and murder, and other wrongs then and there did, to the great damage of the said Eugene Best, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do fur ther present: That the said Abraham Davis and the said James Dumond, of the place aforesaid, on the said nineteenth day of November, 1857, with force and arms, in and upon the body of the said Eugene Best, feloniously did make an assault; and they, the said Abraham Davis and the said James Dumond, with deadly and dangerous weapons, to the jurors unknown, which the said Abraham Davis and the said James Dumond then and there had and held in their hands, feloniously did strike, beat, cut and wound the said Eugene Best, with intent, him, the said Eugene Best, then and there feloniously and willfully to maim, and other wrongs then and there did, to the great damage of the said Eugene Best, contrary to the form of the statute of the State of New York in such case made and provided, and against the peace of the People of the State of New York and their dignity.

And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Abraham Davis and the said James Dumond, of Kingston, aforesaid, on the nineteenth day of November, aforesaid, in the year 1857, with force and arms, in and upon the said Eugene Best, feloniously did make an assault; and they, the said Abraham Davis and the said James Dumond, with their fists and feet, did then and there beat, strike, kick, cut, wound and maim the said Eugene Best, so that his life was greatly despaired of, and other wrongs to the said Eugene then and there did, to the great damage of the said Eugene Best, contrary to the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

J. D. SHAFER, *District Attorney.*

The prisoner pleaded not guilty, and the cause came on for trial in said Court of Sessions, on the 13th of March, 1858.

After the district attorney had introduced the evidence in behalf of the prosecution and rested the case, the counsel for the prisoner insisted that a conviction for assault and battery *with intent to kill* could not be had, on the ground that there was not sufficient evidence of such intent, and asked the court so to direct the jury. But the court refused so to direct the jury, and decided that the evidence was sufficient; to which ruling the counsel for the prisoner excepted.

Witnesses were then examined on the part of the prisoner, and further testimony taken on behalf of the prosecution.

After the evidence was closed, the counsel for the prisoner again insisted that a conviction on the aforesaid indictment could not be had for assault and battery with intent to maim, or for assault and battery with intent to kill, on the ground that there was not sufficient evidence of said intent, and asked the court so to direct the jury, whereupon the court refused so to do, but decided that the evidence *was sufficient;* to which ruling of the court the counsel for the prisoner excepted.

The counsel for the prisoner also asked the court to charge the jury that, as the evidence in the case shows that an injury

The People *v.* Davis.

of the kind proven might be produced by a blow or blows with the fist, that the jury ought not to infer that the injury was occasioned by a blow or blows with a deadly or dangerous weapon in the absence of proof that such weapon was used. The court refused so to charge. To which decision the counsel for the prisoner excepted.

The court, however, did charge the jury, that if it was likely or probable that the injury to Best could have been produced by the fist, then the jury were not authorized to presume a weapon was used.  That in criminal cases the prisoner was entitled to the benefit of any reasonable doubt, and if the jury had any reasonable doubt as to his participation in the occurrence, they should acquit him; and if they had any reasonable doubt as to the intention to kill, they could only convict him of an assault and battery, provided they came to the conclusion that the defendant participated in the transaction.

The jury found the prisoner guilty of an " assault and battery with intent to kill."

*Amasa J. Parker*, for the prisoner.

I. The court erred in deciding when the People rested, and again when the evidence was closed, that *there was sufficient* evidence of an intent to kill. This was decided *as matter of law* in the presence of the jury, and was in fact a charge to the jury. This decision convicted the defendant of felony. The court had no right thus to decide a question of fact. The court did not decide that there was sufficient evidence to go to the jury, but sufficient to convict. The existence of an intent to kill is a question of fact and not of law.

II. There was not a particle of evidence of an intent to kill, nor any evidence from which it could legally be inferred. 1. The law presumes that " a man intends the natural consequences of his own acts "—that is, that a man intended to do what he did do—nothing more. (*Wharton's Am. Cr. L.,* 3d ed., 331, 292.) The defendant committed an assault and battery; he did not kill. The law will presume he intended to commit

an assault and battery, and no more. If any intent beyond the act done is claimed, it must be proved by *additional* circumstances, as that the prisoner had previously threatened to kill; that he used a deadly weapon, and aimed at a vital part of the body; that he had lain in wait for him, and secretly watched him, &c., &c. (*Barb. Cr. Law*, 87, 88; *Arch. Cr. Pl.*, 104.) 2. Here is not only an absence of all such additional circumstances, but the circumstances of the transaction show that there was no intent to kill. Would a person intending to take life strike on the side of the jaw? And with his fist? Would he act without secrecy, in a public place, with witnesses all around in sight and hearing? Does any one believe that Davis really intended to kill Best? 3. There is no proof that defendant had a weapon of any kind, and the law will not presume it, especially when a witness states that jaws have been broken in prize fights with the fist. 4. " The intent forming the gist of the offence must be specifically proved." (*Wharton Am. Cr. L.*, 551; 3 *Harrington, Del.*, 577; 13 *Smedes & Marsh*, 242; 24 *Miss.*, 54; *Addison R., Penn.*, 30.)

III. The jury found the defendant guilty of an assault and battery *with intent to kill*. The verdict makes no reference to the indictment to help it out. There must be something more than an intent to kill. It must be an assault made with fire-arms or an air-gun, or any deadly weapon, "or by such other means or force as was likely to produce death." (2 *R. S.*, 665, § 36.) This is a necessary ingredient of the crime. A *mere intent* is not punishable in earthly tribunals. They take cognizance only when the intent is displayed in certain prescribed and very dangerous *overt* acts. It will not be claimed that striking with the fist on the side of the jaw was such means as was *likely* to produce death. The court, as well as the jury, evidently overlooked the requirements of the statute.

IV. The court erred in refusing to charge as requested, viz.: that as it was proven the injury might be produced by a blow of the fist, the jury ought not, in the absence of proof, to infer that a deadly or dangerous weapon was used. There can be

no protection for the innocent if the most material fact constituting the crime can be inferred in the absence of proof.

V. The jury should have convicted of an assault and battery only, and not of a felony punishable by ten years' imprisonment; and the proceedings should be reversed and a new trial ordered.

*J. D. Shafer* (District Attorney), for the People.

I. The prisoner was legally convicted of an assault and battery with intent to kill. 1. The jury had a right to infer from the evidence that a dangerous weapon was used. 2. It appears from the evidence that both Davis and Dumond had had previous difficulty with Best, and that he apprehended an attack from them. 3. It was done on a dark and stormy night. The expression used by one of them to the other, just before the assault, as well as at the time of it, shows the existence of a concerted murderous design between them. 4. The associations and conduct of the prisoner at that time and previous, warrant the same conclusion.

II. If a deadly weapon is used, an intent to kill is to be inferred. If no weapon is used, then the question is, was there excessive violence. From continued violence and much beating, an intention to kill may be inferred. (The case of *Macklin and others*, 2d *Lewin's Crown Cases*, 225; 4 *Black. Com.*, 200.)

III. The act, taken together, shows malice, and had a fatal result attended it, it would have been murder. (9 *Metcalf*, 93; 13 *Wend.*, 159; 1 *Rus. on Crimes*, 614, note 1.)

IV. The jury found, as a question of fact, that the prisoner did the act with intent to kill; that verdict is conclusive. 1. Where the question is one of doubt, a new trial will not be granted. (5 *Wend.*, 48; 2 *Wend.*, 352; 4 *Yerger*, 152; 1 *Cow.*, 251; 11 *Cow.*, 440; 6 *Cow.*, 682; 2 *Price*, 282; 1 *Burr.*, 54.) 2. The question of malice and intent to kill, if a question of fact or a mixed question of law and fact, is a question for the jury. (*Wharton's Crim. Law*, 637; 2 *Scott*, 369; 2 *Stew. & Porter*, 193; 1 *Greenl. R.*, 135.) 3. The finding of the jury is

conclusive on a question of fact, although it appear affirmatively that the bill of exceptions contain all the evidence. (*Colt* v. *The People,* 1 *Park. Crim. R.,* 621, *per Chan. Walworth.*) 4. That the prisoner used a dangerous weapon may well have been inferred by the jury, if such inference was necessary to convict of assault and battery with intent to kill. The verdict in that case is clearly final. (*People* v. *Vinegar,* 2 *Park. Crim. R.,* 24.)

V. The prisoner was legally convicted of assault and battery with intent to kill, even if the crime, in case of Best's dying of the wound, would have been manslaughter only. (1 *Park. Crim. R.,* 327.) The change of the words " to murder," in the Revised Laws, to the words " to kill," in the Revised Statutes, shows an intention of the Legislature to extend the meaning of the term " to kill " to any of the various degrees of felonious homicide.

VI. The court cannot be required to give an opinion or direct the jury on a mixed question of law and fact, and a refusal to do so is no error. (*Wharton's Crim. Law,* 637 ; 2 *Scott,* 359 ; 2 *Stew. & Porter,* 193 ; 1 *Greenl. R.,* 135.) 1. The office of a bill of exceptions in criminal cases, is to bring up for review questions of law only, made and decided on the trial. (20 *Bar. R.,* 597.) 2. No bill of exceptions can be taken in criminal cases to authorize a superior court to correct an erroneous opinion of the court below, or the decision of a jury upon a matter of fact. The remedy for the party who is injured by an erroneous finding of a jury on a question of fact, is an application for a new trial on a writ of error. (11 *Wend.,* 557 ; 14 *Wend.,* 546, *and cases there cited.*)

VII. For offences greater than misdemeanor, a new trial cannot be granted on the merits, whether the accused be convicted or acquitted. (*People* v. *Comstock,* 8 *Wend.,* 549 ; 6*th Term R.,* 625 ; *Chitty's Crim. Law,* 532 ; 13*th East R. ; Barb. Crim. Law,* 323.)

*By the Court,* GOULD, J. As I understand the prisoner's different requests to charge, they were requests to charge the facts, and were properly refused. And as to the first one,

The People *v.* Davis.

where the judge said the evidence was sufficient, it is perfectly apparent, from the connection, that he meant merely sufficient to go to the jury.

But there are inherent in the case much more serious difficulties in the way of the conviction of a felony.

The third count of the indictment, to make it in itself good, should have after the word " kick," the words " with such force as was likely to produce death," and then a general verdict of " guilty of assault and battery with intent to kill," *as charged in the third count of the indictment,* would probably be good. And it is worth the while of every district attorney to observe this point, and in framing his indictment for cases of assault and battery, so outrageous as plainly was that in this case, to insert a count on which a conviction that will send to the state prison may be had, without calling on the jury to presume, or find from circumstances hardly warranting such finding, that some unknown deadly weapon was used.

The offence is strictly a statute offence. (2 *R. S.,* 665, § 36.) " Every person who shall be convicted of any assault and battery upon another, by means of any deadly weapon, or by such other means *or force* as was likely to produce death, with intent to kill, &c., shall be punished," &c. And no one can doubt that were a strong man to strike with but his fist a heavy blow on the head of a mere child, thereby inflicting severe injury and intense suffering, whether causing or not causing immediate danger to its life, he would clearly be within both the letter and the spirit of committing an assault and battery by such force as was likely to produce death; and eminently worthy of the state prison, for the longest term the law names, would be so brutal a wretch.

Still, unless the indictment were formed to meet the case, there could be no such conviction, and merely charging " an intent to kill," without setting forth some of the means which the statute names, will not warrant a conviction of any offence higher than assault and battery. And in this light, I am unable to see that the verdict is really one finding any grade of crime above an assault and battery; the words " with intent to

kill," having added to them no reference to the indictment whereby the finding could be eked out with the statute requisitions, are merely nugatory. The true and proper way of finding a verdict in a case properly charging the statute intent, would be " that the prisoner was guilty of the assault and battery with a deadly weapon with intent to kill," or " by such force as was likely to produce death, with intent to kill" the person assaulted; and the very least that would make a good verdict of guilty of the higher crime, would be guilty of assault and battery with intent to kill, *as charged in the indictment.*

Viewing the verdict, then, as one of assault and battery, I see no course to be taken with it but that sentence be passed for that offence.

There has been no error for which a new trial should be had, nor is there any conviction of a felony, but there is a perfectly valid conviction of the lesser offence.

Proceedings affirmed.